UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LEGALFORCE RAPC WORLDWIDE P.C., et al.,

Plaintiffs,

v.

UNITED STATES PATENT & TRADEMARK OFFICE,

Defendant.

Case No. 25-cv-09010-PCP

**ORDER DENYING MOTION ATTORNEYS' FEES**

Re: Dkt. No. 27

Plaintiffs LegalForce RAPC Worldwide P.C. and Raj Abhyanker move for an award of fees and costs under 5 U.S.C. § 552(a)(4)(E) for purportedly prevailing in their Freedom of Information Act (FOIA) action against defendant U.S. Patent and Trademark Office (PTO). For the reasons stated below, plaintiffs' motion is denied.

**BACKGROUND**

On November 29, 2024, plaintiffs submitted a FOIA request to the PTO seeking eight types of records regarding the relationship between the PTO's Office of Enrollment and Discipline and the Department of Housing and Urban Development (HUD). On December 31, 2024, the PTO availed itself of a ten-working-day extension of time but did not produce a complete response after that extended period. Plaintiffs contend that, throughout 2025, the PTO provided "shifting estimates" of its production and produced partial interim responses with redactions citing various FOIA exemptions. The PTO reports that, on April 9, 2025, it sent a "First Interim Response" that "included a cover letter and 210 pages of documents."

On September 24, 2025, the PTO referred the FOIA request to HUD, saying that the remaining responsive records were in HUD's possession. Plaintiff Abhyanker appealed the PTO's September 24 letter through PTO's internal process. The PTO denied the appeal, concluding that

United States District Court
Northern District of California

the referral of the remaining FOIA requests to HUD was proper.

Plaintiffs filed this suit on October 20, 2025. On December 19, 2025, the PTO provided plaintiffs with 12 pages of records "that had been collected but not processed and provided" to plaintiffs. The Court granted the PTO's partial motion to dismiss on February 12, 2026. Dkt. No. 17. After the Court's partial dismissal, the PTO and HUD completed the requested production requests on March 27, 2026. On April 27, 2026, the PTO and HUD confirmed that the government had completed its production. Plaintiff Abhyanker requests $12,000 in fees based on a lodestar calculation of 12 hours of work at a $1,000 per hour rate.

**LEGAL STANDARD**

5 U.S.C. § 552(a)(4)(E) provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." One way a complainant "substantially prevails" is through "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* § 552(a)(4)(E)(ii)(II).

A party seeking FOIA fees must show both eligibility for fees—meaning that it "substantially prevailed"—and an entitlement to fees, which remains in the court's discretion. *Hiken v. Dep't of Defense*, 836 F.3d 1037, 1043–44 (9th Cir. 2016). Eligibility under 5 U.S.C. § 552(a)(4)(E)(ii)(II) requires "a causal nexus between the litigation and the voluntary disclosure or change in position by the Government. Thus, the plaintiff in this case had to present convincing evidence that the filing of the action had a substantial causative effect on the delivery of the information." *First Amendment Coalition v. U.S. Dep't of Justice*, 878 F.3d 1119, 1128 (9th Cir. 2017) (cleaned up). Courts should consider three factual criteria in determining whether a plaintiff substantially prevailed: "(1) when the documents were released, (2) what actually triggered the documents' release, and (3) whether the plaintiff was entitled to the documents at an earlier time." *Id*. at 1129 (cleaned up). In determining entitlement, the court "must consider: (1) the public benefit from disclosure, (2) any commercial benefit to the plaintiff resulting from disclosure, (3) the nature of the plaintiff's interest in the disclosed records, and (4) whether the government's withholding of the records had a reasonable basis in law." *Hiken*, 836 F.3d at 1044 (quoting *Long*

*v. IRS*, 932 F.2d 1309, 1313 (9th Cir. 1991)) (cleaned up).

**ANALYSIS**

Plaintiffs have not established their eligibility for fees and costs because they have not shown a causal nexus between their suit and the subsequent disclosure of additional documents by HUD.[1] Plaintiffs filed their suit seeking to compel disclosure of the requested documents on October 20, 2025. By that point, the PTO had already produced 210 pages of documents. In December 2025, PTO produced 12 more pages of documents. HUD produced more documents on March 27, 2026, and confirmed that it had completed production on April 27, 2026.

Plaintiffs rely on the sequence of events to assert that their lawsuit caused PTO to change its position. But the government's decision to disclose documents to plaintiffs appears to have never been in doubt. The PTO referred plaintiff's FOIA request to HUD on September 24, 2025, *before* plaintiffs filed suit. As the United States explains, plaintiffs' suit did not produce a change in the PTO's position as to whether it would release records because "before Plaintiffs sued, the USPTO had already decided to produce the requested records." The United States also points out that plaintiffs' suit could not have caused the post-filing production of documents in March 2026 because *HUD* (which is not a party here) produced those documents, not the PTO.

Plaintiffs argue that their October 2025 lawsuit spurred additional productions from the government. They note that although the PTO referred the request to HUD on September 24, 2025, HUD did not receive the letter until January 20, 2026. Plaintiffs argue that their intervening suitis what prompted the USPTO to send their FOIA request along. Additionally, plaintiffs argue that the additional 12 pages of documents USPTO sent in December 2025 "surfaced only because the litigation prompted a further review."

Plaintiffs cite no evidentiary support for their causal claim. They rely entirely on the

---

[1] The parties disagree as to whether a pro se attorney such as Abhyanker can recover fees and costs under FOIA. Because the Court concludes that plaintiffs are in any event not eligible for fees and costs, that issue need not be resolved here. The Court notes, however, that several out-of-circuit authorities persuasively suggest that an organization represented by in-house counsel may recover its fees and costs. *See Kay v. Ehrler*, 499 U.S. 432 (1991); *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 324–25 (D.C. Cir. 2006); *see also Schneider v. Colegio de Abogados de Puerto Rico*, 187 F.3d 30 (1st Cir. 1999).

temporal sequence of events. But the mere fact that HUD received the referral and disclosed additional documents after the filing of this lawsuit does not provide affirmative evidence that their lawsuit caused a substantial change in the PTO's position. As noted already, the PTO had decided to refer plaintiffs' request to HUD before plaintiffs ever filed suit and, as the United States explains, the additional documents produced shortly after the lawsuit's filing "had been collected but inadvertently not processed." Even granting that the date of HUD's *receipt* of the referral request took too long, the temporal lag does not suggest that plaintiff's suit caused any change in the PTO's position.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for fees and costs is denied.

**IT IS SO ORDERED.**

Dated: September 2, 2026

P. Casey Pitts
United States District Judge